**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

RHONDA FAYE LEE, )
)
Plaintiff, )
)
v. )     1:17CV475
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social )
Security, )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rhonda Faye Lee, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 7, 10; see also Docket Entry 9 (Plaintiff's Memorandum); Docket Entry 11 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of June 27, 2011. (Tr. 174-75.) Upon denial of that application initially (Tr. 62-74, 95-103) and on reconsideration (Tr. 75-91, 105-12), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 113). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-61.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-28.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-9, 228-35), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since June 27, 2011, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, arthritis of the bilateral knees, depressive disorder, and bipolar disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [Plaintiff] can occasionally climb ladders, ropes or scaffolds, stairs or ramps. [Plaintiff] can occasionally stoop, crouch, kneel, crawl and occasionally engage in activities requiring balance. [Plaintiff] must avoid concentrated exposure to operational control of moving machinery or unprotected heights. [Plaintiff] is able to

perform simple, routine and repetitive tasks and work in
[a] low-stress job defined as occasional decision-making
and occasional changes in the work setting.

. . .

6.   [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the [] Act, from June 27, 2011, through the
date of this decision.

(Tr. 15-28 (bold font and internal parenthetical citations

omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

of [the Court's] review of [such a] decision . . . is extremely

limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the

extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."

Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

('RFC')." <u>Id.</u> at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>See id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ "failed to follow Fourth Circuit precedent in completely failing to provide an explanation for the weight that he accorded to the opinions of [Plaintiff's] treating physician and physical therapist and the consultative examiner" (Docket Entry 9 at 6 (standard capitalization applied and single-spacing omitted)); and

2) the ALJ erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work" (id. at 7 (standard capitalization applied and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 11 at 3-16.)

## 1. Medical Opinion Evidence

In Plaintiff's opening assignment of error, she contends that the ALJ "failed to follow Fourth Circuit precedent in completely failing to provide an explanation for the weight that he accorded to the opinions of [Plaintiff's] treating physician and physical therapist and the consultative examiner." (Docket Entry 9 at 6 (standard capitalization applied and single-spacing omitted).) In particular, Plaintiff asserts that the ALJ's conclusory reasoning for according little weight to the opinions of treating physician Dr. Woodward Burgert III and physical therapist Sangini Rane, as

well as some weight to the opinions of the consultative medical examiner Dr. Ramnik Zota, "fail[ed] to provide sufficient specificity for a reviewing court to engage in meaningful review." (Id. at 7 (citing Tr. 26, Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), and Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013)).) According to Plaintiff, "[t]he opinion of a treating physician is entitled to great weight and may only be disregarded if there is persuasive contradictory evidence." (Id. at 6 (citing Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987)).) Plaintiff's contentions fall short.

a. Dr. Burgert/Ms. Rane

As an initial matter, Plaintiff misrelies on Coffman and the "persuasive contradictory evidence" standard. (Id.) That phrasing of the "treating physician rule" no longer represents the governing standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. CBD-10-1238, 2013 WL

9

937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); <u>Benton v.</u> <u>Astrue</u>, Civil Action No. 0:09-892-HFF-PJG, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); <u>Pittman v. Massanari</u>, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001); <u>Ward v. Chater</u>, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

Under the proper standard, the treating source rule does generally require an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. <u>See</u> 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. <u>See</u> 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence in the case record. <u>See</u> 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is

not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis added).

In this case, on May 15, 2014, Ms. Rane completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (Tr. 355-58), which Dr. Burgert signed on June 5, 2014 (<u>see</u> Tr. 358). Ms. Rane noted that an evaluation of Plaintiff demonstrated "[d]ecreased lumbo pelvic and pelvic femoral stability, poor core strength[,] limited lumbar [and] thoraco-lumbar mobility[,] [and a] lack[] [of] frontal plane control resulting in muscle compensation [and] pain[.]" (Tr. 356.) Dr. Burgert/Ms. Rane opined that, as a result of those impairments, Plaintiff could lift and/or carry less than ten pounds occasionally (<u>see</u> Tr. 355), could stand and/or walk for less than two hours and sit for less than about six hours in an eight-hour workday, could never squat, bend, climb, kneel, crawl, or stoop, could occasionally balance (<u>see</u> Tr. 356), could occasionally reach overhead (<u>see</u> Tr. 357), and required limited exposure to vibration (<u>see</u> Tr. 358).

The ALJ assessed the opinions of Dr. Burgert/Ms. Rane as follows:

> The undersigned accords little weight to the treating source statement completed by [Plaintiff's] physical therapist, [Ms. Rane] and signed by [Dr. Burgert] in June 2014. They opine [Plaintiff] is capable of a less than sedentary exertion, and is unable to squat or bend, climb, kneel, crouch, or crawl but can occasionally

balance.  Furthermore, [Plaintiff] is limited in reaching
and can occasionally be exposed to vibration.  While Dr.
Bu[rgert] is [Plaintiff's] treating and examining primary
care physician, and [Ms.] Rane is [Plaintiff's] treating
and examining physical therapist, their opinion is not
consistent with the evidence as a whole.  Furthermore,
evidence received at hearing level reflects [Plaintiff]
is not as limited as opined.  As such, the opinion is
accorded little weight.

(Tr. 26 (internal citations omitted).)  Plaintiff challenges the

ALJ's rejection of those opinions as "'not consistent with the

evidence as a whole'" and because "'evidence received at the

hearing level reflect[ed] that [Plaintiff] [wa]s not as limited as

alleged'" (Docket Entry 9 at 7 (citing Tr. 26)), arguing that the

ALJ's rationale constituted "precisely the kind of conclusory

analysis that the Fourth Circuit held in *Monroe* and *Radford* did not

allow for meaningful substantial evidence review" (id.).

The ALJ did not reversibly err in his evaluation of the

opinions of Dr. Burgert/Ms. Rane.  Although the ALJ did not detail

the evidence that conflicted with those opinions in the same

paragraph in which the ALJ announced his weighing of them (see Tr.

26), the ALJ's earlier discussion of the medical evidence permits

the Court to meaningfully review his evaluation.  See McCartney v.

Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge

to ALJ's finding for lack of sufficient detail where other

discussion in decision adequately supported finding and stating

"that the ALJ need only review medical evidence once in his

decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125,

at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis). Earlier in the ALJ's decision, he concluded that "the objective medical evidence . . . d[id] not reflect that [Plaintiff] [wa]s as limited as alleged" (Tr. 22), and made the following pertinent findings:

- Although treatment records from Greensboro Orthopedic Center showed Plaintiff had a positive straight leg raise test, she had no tenderness on palpation or swelling (Tr. 22; see also Tr. 257);

- Dr. David Spivey of Preferred Pain Management "report[ed] th[at] epidural steroid injections have reduced [Plaintiff's] low back and leg pain[,]" and that "[w]hile [Plaintiff] exhibited diminished range of motion in flexion, [she had] no muscle spasms" (Tr. 22; see also Tr. 303, 308);

- Dr. Burgert's own treatment records indicate that Plaintiff's "methadone [wa]s effective in managing pain[,]" and that she "[wa]s more active with her granddaughter" (Tr. 22; see also Tr. 315), as well as that Plaintiff's "back pain [wa]s in good control" (Tr. 23; see also Tr. 427);

- Although notes of office visits at Nova Neurosurgery reflect that Plaintiff "had worsening back pain after moving furniture and boxes[,] . . . no tenderness to palpation was noted, and [Plaintiff] maintained a normal gait without leg weakness or notable radiculopathy[,] . . . normal muscle tone and alignment, [and] no range of motion deficits, clubbing, edema, or loss of sensation in her upper and lower extremities" (Tr. 22; see also Tr. 264-65, 266, 270, 271, 273, 276, 277).

In addition, the ALJ noted Plaintiff's medication and treatment non-compliance "demonstrate[d] a possible unwillingness

to do what [wa]s necessary to improve her condition . . . [and] m[ight] be an indication that her symptoms are not as severe as she purports." (Tr. 22.) The ALJ also referenced Plaintiff's daily activities, including tending to her personal hygiene, preparing simple meals, completing household chores, caring for her granddaughter during the day, driving, and packing and moving boxes and furniture in the course of relocating her residence, which the ALJ found "require[d] significant physical and mental demands, [and] [we]re not consistent with the level of limitation [Plaintiff] allege[d]." (Tr. 21.)

Simply put, the ALJ's earlier discussion of evidence inconsistent with the opinions of Dr. Burgert/Ms. Rane permits the Court to meaningfully review the ALJ's decision to discount those opinions.

b. Dr. Zota

Consultative examiners such as Dr. Zota do not constitute treating sources under the regulations, see 20 C.F.R. § 404.1527(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or

she affords to such opinions. See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)).

On February 25, 2014, Dr. Zota conducted a consultative medical examination of Plaintiff (Tr. 309-14), reporting Plaintiff's diagnoses as "migraine headache, mental health issues, anxiety, nervousness, chronic lower back pain, multilevel degenerative disc disease, [and] moderate-to-severe arthritis in both knees" (Tr. 311). Dr. Zota indicated that, as a result of those impairments, Plaintiff could sit and stand for 15 to 20 minutes at a time and for a total of three hours in an eight-hour workday, walk two to three blocks, and could lift no more than ten pounds, but had no limitations in carrying, handling objects, hearing, speaking, or traveling. (See id.)

The ALJ evaluated Dr. Zota's opinions as follows:

[Dr. Zota] . . . opined that . . . [Plaintiff] would be limited to standing 20 minutes, for a total of three

15

hours in an eight-hour workday, walking two to three blocks, bending and lifting of no more than ten pounds but would have no limitations in carrying, handling objects, communication or travel. Some weight is accorded to this opinion. First, while Dr. Zota is an acceptable medical source fully familiar with the Social Security policies and regulations regarding disability, she does not have a longitudinal treatment history with [Plaintiff] for the alleged impairments. Furthermore, she examined [Plaintiff] on one occasion. Moreover, evidence received at [the] hearing level shows [Plaintiff] is not as limited as opined. For example, the most current records reflect normal clinical findings and normal gait. As such, Dr. Zota is accorded some weight.

(Tr. 26 (internal citation omitted)). Plaintiff concedes that the ALJ's "reasoning for according some weight to [Dr. Zota's opinions] [wa]s slightly more explanatory, in that [the ALJ] stated that 'the most current records reflect normal clinical findings and [] normal gait.'" (Docket Entry 9 at 7 (quoting Tr. 26).) However, Plaintiff maintains that the ALJ's analysis remains "deficient under Fourth Circuit precedent, as 'the most current records' fails to provide sufficient specificity for a reviewing court to engage in meaningful review." (Id. (quoting Tr. 26).)

The ALJ did not commit an error warranting remand in his evaluation of Dr. Zota's opinions. Plaintiff correctly notes that the ALJ did not describe the evidence inconsistent with Dr. Zota's opinions in the above-quoted paragraph (see id.; see also Tr. 26); however, the ALJ's earlier discussion of the medical evidence permits the Court to meaningfully review his evaluation of Dr. Zota's opinions. See McCartney, 28 F. App'x at 279-80; Kiernan,

16

2013 WL 2323125, at *5.  As detailed above, earlier in the ALJ's decision, he concluded that "the objective medical evidence . . . d[id] not reflect that [Plaintiff] [wa]s as limited as alleged" (Tr. 22), and provided multiple examples of evidence inconsistent with Dr. Zota's opinions (see Tr. 21-22).

Moreover, contrary to Plaintiff's allegation (see Docket Entry 9 at 7), earlier in the ALJ's decision, he did detail more current records that conflicted with Dr. Zota's opinions.  In that regard, the ALJ noted:

- The more current records reflect [Plaintiff] has a limited range of motion in her lumbar spine but a negative straight leg [test] and normal clinical findings[,] . . . a normal gait without difficulty in heel and toe walking[,] [and] despite diffuse tenderness with palpation, . . . full muscle strength and sensation (Tr. 22-23 (citing Tr. 310, 313-14, 336) (emphasis added) (internal citations omitted));

- Dr. Burgert noted on April 13, 2014, that Plaintiff's "back pain [wa]s in good control" (Tr. 23 (quoting Tr. 427));

- Records subsequent to Plaintiff's October 4, 2013, right knee arthroscopy "reflect [Plaintiff] had full range of motion, stable ligaments[,] . . . was in no acute distress[,] . . . [and] had a normal gait, . . . and full strength" (id. (citing Tr. 328, 334, 339, 342)).

Thus, considering the ALJ's decision in totality, the Court can trace the path of the ALJ's reasoning in declining to assign much weight to Dr. Zota's opinions.

In short, Petitioner has shown no basis for relief arising from the ALJ's decision to discount the opinions of Dr. Burgert/Ms. Rane and Dr. Zota.

## 2. RFC

In Plaintiff's second and final assignment of error, she contends that the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work." (Docket Entry 9 at 7 (standard capitalization applied and single-spacing omitted).) More specifically, Plaintiff faults the ALJ for (1) failing to cite to substantial evidence to support his decision to discount Plaintiff's subjective symptom reporting (id. at 8-9), and "erroneously equat[ing] Plaintiff's ability to engage in some activities on her own schedule with an ability to work full-time" (id. at 11); (2) not incorporating the opinions of Dr. Burgert/Ms. Rane and Dr. Zota into the RFC (id. at 9-10); and (3) neglecting to account for Plaintiff's moderate limitation in concentration persistence, or pace ("CPP") in the RFC (id. at 10-11). Plaintiff's arguments miss the mark.

a. Subjective Symptom Reporting

Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p") and the Commissioner's regulations provide a two-part test for evaluating a claimant's statements about symptoms. See

SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529.[5]

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the

_____

[5] Applicable to ALJ decisions on or after March 28, 2016, the SSA superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") with SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." SSR 16-3p, 2017 WL 5180304, at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case post-dates the effective date of SSR 16-3p (see Tr. 28) and, thus, this Recommendation will apply SSR 16-3p to the ALJ's analysis of Plaintiff's subjective complaints.

entire case record, <u>including the objective medical evidence</u>; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." <u>Id.</u> (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

<u>Id.</u> at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms <u>solely</u> because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the

individual." Id. at *5 (emphasis added).  In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible for the reasons explained in th[e] decision."  (Tr. 21 (emphasis added).)

As an initial matter, although not argued by Plaintiff (see Docket Entry 9), the ALJ's analysis of Plaintiff's subjective symptom reporting does not fully comply with SSR 16-3p.  As discussed above, SSR 16-3p, which applies to the ALJ's decision, "eliminat[ed] the use of the term 'credibility' from . . . sub-regulatory policy, . . . [and] clarif[ied] that subjective symptom evaluation is not an examination of the individual's character."  SSR 16-3p, 2017 WL 5180304, at *1 (emphasis added).  Here, the ALJ cited SSR 96-7p at the outset of his RFC analysis (see Tr. 20), and referred to Plaintiff's credibility on four separate occasions in the decision (see id. (noting that "whenever statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, the [ALJ] must make a finding on the credibility of the statements" (emphasis added)), Tr. 21 (finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible for the reasons explained in th[e] decision[,]"

and concluding that "the record contains inconsistencies that bring [Plaintiff's] credibility into question" (emphasis added), Tr. 26 (commenting that Plaintiff's "disability could only be based upon subjective symptoms that the [ALJ] finds are not fully credible" (emphasis added))).

However, any errors by the ALJ in that regard remain harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Despite the ALJ's use of the term "credibility" in his initial recitation of applicable authority (see Tr. 20) and in certain areas of the decision summarizing his findings (see Tr. 21, 26), in the material portions of his subjective symptoms analysis, he adhered to SSR 16-3p's requirement that such analysis focus on "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record." SSR 16-3p, 2017 WL 5180304, at *2 (emphasis added). For example, in analyzing Plaintiff's daily activities, the ALJ stated that, "[w]ith regard to the consistency of statements about the intensity, persistence and limiting effects of symptoms pursuant to 16-3p, the [ALJ] finds that [Plaintiff's] alleged daily activities are not entirely consistent with her

allegation of disabling physical and mental symptoms and limitations." (Tr. 21 (emphasis added).) Similarly, the ALJ observed that "the record contain[ed] _inconsistencies_" regarding Plaintiff's medication compliance "that diminish[ed] the persuasiveness [of] [Plaintiff's] statements" (_id._ (emphasis added)), and further noted "_inconsistencies_" with respect to Plaintiff's reported prior work history (Tr. 22 (emphasis added)).

Plaintiff first argues that the ALJ did not base his analysis of Plaintiff's subjective complaints of symptoms on substantial evidence. (_See_ Docket Entry 9 at 8-9.) In support of that argument, Plaintiff summarized her hearing testimony (_see id._ at 8), and then asserted that her "testimony is strongly supported by the record, as all of the symptoms that [Plaintiff] testified to experiencing have been repeatedly documented in her medical records" (_id._ at 9 (citing Tr. 236, 238, 244, 249, 252, 257, 260, 273, 275, 283, 305, 308, 325, 359, 385, 387, 391, 393, 396, 397)). However, Plaintiff misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his analysis of Plaintiff's subjective symptom reporting with substantial evidence, defined as "more than a mere scintilla of evidence but may be somewhat less than a preponderance," _Mastro_, 270 F.3d at 176 (brackets and internal quotation marks omitted), and not whether other record evidence weighs against the ALJ's analysis, _Lanier v. Colvin_, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9,

2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). The ALJ here buttressed his finding that the record as a whole did not support Plaintiff's subjective complaints of symptoms, by noting that Plaintiff's alleged daily activities, medication non-compliance, reports regarding her work history, and the objective medical evidence did not harmonize with those complaints. (See Tr. 21-22.)

Regarding Plaintiff's daily activities, she contends that the ALJ "erred by suggesting that [Plaintiff's] ability to perform [daily activities] when she [wa]s able indicate[d] an ability to perform light work on a sustained basis, five days a week, eight hours per day." (Docket Entry 9 at 11.) Plaintiff's argument glosses over the fact that the ALJ did not base his RFC determination solely on Plaintiff's ability to engage in a wide range of daily activities. The ALJ additionally evaluated inconsistencies regarding Plaintiff's medication compliance and work history (see Tr. 21-22), the objective medical evidence (see Tr. 22-24), and the opinion evidence of record (see Tr. 24-26) in reaching his conclusion regarding Plaintiff's RFC.

b. Opinion Evidence

Plaintiff next argues that the ALJ's "finding that [Plaintiff] can perform a reduced range of light work is in direct

contradiction with the assessments of [Dr. Burgert/Ms. Rane] and [Dr. Zota]." (Docket Entry 9 at 9.) However, as discussed above in connection with Plaintiff's first assignment of error, the ALJ did not reversibly err with respect to his decisions to discount the opinions of Dr. Burgert/Ms. Rane and Dr. Zota and, therefore, the ALJ labored under no obligation to include all of their restrictions in the RFC.

c. CPP

Plaintiff additionally maintains that the ALJ's "RFC analysis failed to fully and accurately account for [Plaintiff's] mental limitations in [CPP]." (Id. at 10.) According to Plaintiff, "[w]here a claimant has limitations in [CPP], an ALJ does not account for such limitations by restricting a claimant's [RFC] to simple, routine tasks or unskilled work[,]" because "[t]he ability to perform simple tasks differs from the ability to stay on task[, and] [o]nly the latter limitation would account for a claimant's limitation in [CPP]." (Id. (citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015)).) Plaintiff thus argues that the ALJ failed to account for Plaintiff's moderate difficulties in CPP by "limit[ing] [Plaintiff] to 'simple, routine, repetitive tasks [('SRRTs')] in a low-stress job, defined as occasional decision-making and occasional changes in the workplace.'" (Id.)

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and

that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not result in any limitation in the RFC. Id. A neighboring district court had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to SRRTs in a low-stress job (see Tr. 20) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms, including her claim that she "has difficulty with maintaining concentration and attention, [and] completion of tasks[,]" but found her statements not entirely persuasive of disability. (Tr. 21.) As discussed above, the ALJ supported his evaluation of Plaintiff's subjective complaints with substantial evidence.

Second, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 25-26.) The ALJ accorded "great weight" to the opinion of consultative psychological examiner Dr. Melanie B. Malterer that Plaintiff could "understand, follow and retain basic instructions[] [and] maintain [CPP]." (Tr. 25; see also Tr. 404.) The ALJ also gave "great weight" to the state agency psychological consultants' opinions. (Tr. 25.) Notably, both consultants found that Plaintiff suffered moderate limitation in CPP (see Tr. 67, 82), but that, despite that concentrational deficit, Plaintiff remained "able to remember and follow instructions" (Tr. 70, 86), and "able to sustain and persist long enough to complete a workday" (Tr. 71, 87 (emphasis added)).[6] Under these circumstances, the ALJ

_____

[6] Both state agency psychological consultants also included a restriction to a "low production work environment." (Tr. 71, 87.) The ALJ, despite giving "great weight" to the state agency psychological consultants opinions (see Tr. 25), did not include a restriction to a low production setting in the RFC (see Tr. 20). Neither Plaintiff nor the Commissioner addressed this apparent inconsistency between the consultants's opinions and the RFC in their briefing to this Court. (See Docket Entries 9, 11.) The Court thus need not address that subject. See generally Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell out
(continued...)

27

adequately explained why restrictions to SRRTs in a low-stress job (see Tr. 20) sufficiently accounted for Plaintiff's moderate limitation in CPP.

In sum, the ALJ did not err in finding that Plaintiff retained the RFC to perform a reduced range of light work.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 4, 2018

---

[6] (...continued)
its arguments squarely and distinctly, or else forever holds its peace."); Hughes, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").